460 S.E.2d 25

**Jacqueline Bennett COX, Plaintiff Below, Appellee**

v.

**STATE of West Virginia, Defendant Below,**

**Department of Natural Resources, Appellant.**

**Nos. 22484, 22485.**

Supreme Court of Appeals of West Virginia.

Submitted May 16, 1995.

Decided June 15, 1995.

Concurring Opinion of Justice Cleckley June 23, 1995.

---

and also sanctioning the State by striking the State's pleadings, which resulted in judgment on the pleadings. Ms. Cox sued the State to quiet title to an 105.21 acre tract located in Canaan Valley State Park. After the State failed to respond to Ms. Cox's summary judgment motion, requests for admission and discovery requests, the circuit court awarded Ms. Cox summary judgment and sanctioned the State by striking its pleadings. On appeal, the State argues that no evidence supports the finding that it willfully failed to respond to discovery requests, that the circuit court failed to hold an evidentiary hearing on discovery requests and that the State will suffer prejudice if required to use eminent domain to acquire the disputed tract.[1] Because the record shows no error, we affirm the circuit court's decision.

I

On December 16, 1992, Ms. Cox filed suit to quiet title to a 105.21 acre tract of land located in Canaan Valley State Park, Tucker County, West Virginia (hereinafter the tract). In her complaint, Ms. Cox alleges that she has title to the tract because she and her predecessors in interest, under color of title, possessed the tract openly, notoriously and continuously for more than 60 years. Ms. Cox maintains that the Division's placing markings and signs and maintaining trails on her tract constitutes an ongoing trespass. Ms. Cox also alleges that the Division's development of the park had caused her tract to become surrounded by park land. Attached to Ms. Cox's complaint is a March 16, 1964 letter from the Department of Natural Resources to John A. Bennett, Ms. Cox's father and predecessor in interest, acknowledging that the tract was subject to competing claims and offering to pay one-half of the market price, as agreed to by the parties, for a quitclaim deed.

The State filed a timely answer denying the allegations and claiming title to the tract through the will of Sarah Maude Kaemmerling, which the State alleges is superior to Ms. Cox's title.

John W. Cooper and Lori M. Hood, Cooper & Preston, Parsons, for appellee.

Darrell V. McGraw, Jr., Atty. Gen. and Stephen R. Van Camp, Deputy Atty. Gen., Charleston, for appellant.

PER CURIAM:

The Division of Natural Resources of the State of West Virginia appeals an order of the Circuit Court of Tucker County granting Jacqueline Bennett Cox summary judgment

1. The State does not address the merits of the circuit court's grant of summary judgment.

On April 21, 1993, Ms. Cox served the State with a set of Interrogatories and Requests for Production of Documents. According to Ms. Cox, after the State failed to respond, her lawyer contacted Russell M. Hunter, the Assistant Attorney General representing the State, who said that the State would respond during the week of June 21, 1993. On June 23, 1993, the circuit court scheduled a jury trial for August 30, 1993.

Because the State failed to respond to Ms. Cox's discovery requests, on August 10, 1993, Ms. Cox filed motions to compel discovery and to continue the jury trial. After a hearing on August 20, 1993, which was not attended by the State's lawyer [2], on August 26, 1993, the circuit court ordered the State to comply with Ms. Cox's discovery requests on or before August 31, 1993 or "its Answer and other pleadings will be stricken and Plaintiff will be granted summary judgment and Plaintiff's prayers for relief in the Counts of the Complaint will be granted." The circuit court also rescheduled the jury trial for December 16, 1993.

On August 31, 1993, the State answered at least some of the interrogatories and produced at least some of the documents.[3] One of the documents that the State failed to produce was the Division's March 16, 1964 letter that had been attached to Ms. Cox's complaint.

By letter dated September 3, 1993, Ms. Cox's lawyer requested the State to provide entire copies of the plats for comparison. No answer was received. On September 24, 1993, Ms. Cox served the State with 55 Requests for Admission, to which the State made no response.

On October 28, 1993, Ms. Cox filed a motion for summary judgment based on the State's answer, facts admitted, tax maps and County Assessor's records. Ms. Cox also filed a motion for sanctions alleging that the State failed to comply with discovery requests. Both motions were noticed for a hearing on November 12, 1993. The State did not respond to either motion, did not request a continuance, and did not file any evidentiary rebuttal. During the November 12, 1993 hearing, the Tucker County Assessor testified that according to official tax maps, the disputed tract "is outside the [State Park] boundary...." Mr. Hunter, the State's lawyer, said he had a copy of the State's title report, which was available at the hearing, and he agreed that partial maps had been supplied. The State argued that the existence of a material issue of fact concerning adverse possession precluded summary judgment, but failed to present any counter affidavit(s) or any additional document(s) or to retract explicitly any of its admissions.

By order dated November 19, 1993, the circuit court granted Ms. Cox's motion for summary judgment and motion for sanctions by striking all of the State's pleadings and awarding Ms. Cox judgment on the pleadings. Ms. Cox was also awarded an easement because the disputed tract was landlocked by virtue of the State's previous land acquisitions.

On February 7, 1994, the State, now represented by Shirley A. Skaggs, Senior Assistant Attorney General, filed a motion to reconsider. Attached to the motion were several additional documents and plats that had been requested in discovery; however, no

2. According to Ms. Cox's brief, counsel for the State failed to notify either the Court or Ms. Cox's lawyer that the State would not appear at the August 20, 1993 hearing. Judge Frye and Ms. Cox's lawyer were present in open court and after waiting 45 minutes, Judge Frye instructed Ms. Cox's lawyer to telephone counsel for the State. When contacted, Mr. Hunter said he would not appear and did not oppose the granting of either motion.

3. Ms. Cox maintains that the State's August 31, 1993 responses were either incomplete or missing. Ms. Cox noted that no answer was provided

to one interrogatory and that the State failed to provide its title abstracts, files, reports or complete copies of maps and plats.

The State maintains that the omitted material was insignificant and because Ms. Cox already knew of the Division's 1964 letter, she suffered no prejudice.

In support of its Motion to Reconsider filed on February 7, 1994, the State submitted as exhibits over one hundred pages of documents which Ms. Cox alleges should have been disclosed in discovery.

title report or abstract was attached.[4] At the March 18, 1994 hearing,[5] the State argued that its title is superior to Ms. Cox's title and that summary judgment was premature and not a proper sanction for failure to respond to discovery requests. The State also said that the "State's responses to the admissions and amended admissions are being prepared and will be submitted to the court for its review in the near future."[6] Ms. Cox argued that the State's motion to reconsider was untimely because Rule 59(e) [1978] of the *W.Va.R.Civ.P.* requires the motion to be filed within 10 days and no ground for a Rule 60(b) motion was asserted. Ms. Cox also asserts that the attachment of documents, exhibits and an affidavit was solely to augment the record for appeal.

After the hearing, by order dated May 9, 1994, the circuit court denied the State's motion to reconsider. The State then appealed to this Court.

## II

The circuit court awarded Ms. Cox judgment on two separate grounds: (1) summary judgment; and (2) a sanction, imposed on the State for failure to comply with a discovery order, striking the State's pleadings and then awarding Ms. Cox judgment on the pleadings.[7] Although the State contends that summary judgment was contingent on the sanction award, the circuit court granted Ms. Cox summary judgment independently of the sanction award.[8] We first consider whether the award of summary judgment was proper.

 "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *In accord Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 56, 459 S.E.2d 329, 333 (1995), *rehearing denied*, May 11, 1995. Our traditional standard for granting summary judgment is stated in Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord* Syl. pt. 1, *Williams, supra*; Syl. pt. 2, *Painter, supra*; Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Recently in *Williams* and *Painter*, we clarified the application of our long settled principles regarding summary judgment under Rule 56 [1978] of the *W.Va.R.Civ.P.* Subsection c of Rule 56 states, in pertinent part,

---

4. The State gave conflicting accounts on why the material was not produced earlier. During the November 18, 1993 hearing, Mr. Hunter, the State's lawyer at the time, said, "I copied and furnished what file was provided me by the agency ... there has been no intentional pigeonholing of any documents by counsel or anybody else...." During the March 18, 1994 hearing, the State, now represented by Ms. Scaggs, said, "[A] lot of that information was prepared and given to the attorney and never made its way to Mr. Cooper [Ms. Cox's lawyer]." However, Ms. Scaggs also said that the agency "prepared a first set of copies of information that was requested and that information was never picked up from his office and never forwarded to Mr. Cooper."

5. According to the transcript, the State scheduled a hearing for about two weeks earlier. When the State failed to appear, the circuit court said he "personally called your [the State's lawyer's] office and the secretary said well she called in sick today, she is not going to be here, so nobody called me to tell me you had called in sick."

6. The record on appeal contained no response from the State to Ms. Cox's requests for admission.

7. Although the circuit court does not articulate the bases for judgment, we interpret this action to be a Judgment on the Pleadings under Rule 12(c) [1994] of the *W.Va.R.Civ.P.*

8. The November 18, 1993 order of the circuit court first addressed Ms. Cox's motion for sanctions and then her motion for summary judgment. Although the State argues that during the November 12, 1983 hearing, the circuit court's grant of summary judgment resulted from the circuit court's imposition of sanctions, the court's written order indicated that judgment was awarded on both bases. Indeed, in its May 9, 1994 order denying the State's motion to reconsider, the circuit court said that its November 18, 1993 order "granted simultaneous judgments in favor of the Plaintiff on two separate grounds and bases: ..." (1) sanctions and (2) summary judgment.

that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

 In *Williams,* we said that at the summary judgment stage the circuit court's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Williams,* 194 W.Va. at 59, 459 S.E.2d at 336, *quoting, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). *See* Syl. pt. 3, *Painter, supra.* We concluded that "we must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion. [Citations omitted.]" *Williams,* 194 W.Va. at 59, 459 S.E.2d at 336.

Syl. pt. 2, *Williams,* states:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*See also* Syl. pt. 4, *Painter, supra.*

Syl. pt. 3, *Williams,* states:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

 In this case, Ms. Cox supported her motion for summary judgment with the facts admitted by the State including the following:

(1) Ms. Cox and her predecessors in interest held title to the tract continuously since 1919 and paid real estate taxes on the tract since 1926.

(2) Although the State acquired title through eminent domain to other real estate owned by Ms. Cox's father, her predecessor in interest for this tract, the State failed to condemn or otherwise acquire the tract.

(3) Ms. Kammerling, who devised various real estate in Tucker County to the State and who, allegedly was State's predecessor in interest on the tract, had "never purchased or acquired title" to the tract; and,

(4) The State had never received a deed to the tract and according to State tax maps, the tract was outside Canaan Valley State Park and listed under the names of Ms. Cox and her predecessors in interest.

Given the admissions of the State, we agree with the circuit court that Ms. Cox make a properly supported motion for summary judgment. Once Ms. Cox met her initial burden of production and persuasion, the burden of production shifted to the State, which did nothing. The State failed (1) to retract its admissions or otherwise attempt to rehabilitate the evidence; (2) produce additional evidence; or (3) submit an affidavit explaining why further discovery was necessary. *See* Syl. pt. 3, *Williams, supra.*

The State's allegation of superior title to the tract was contradicted by its own admissions. *See Williams,* 194 W.Va. at 60 n. 12, 459 S.E.2d at 337 n. 12, noting that "[a] conflict of evidence does not create a 'genuine issue of fact' if it unilaterally is induced." In this case, there is no conflict of evidence; rather a conflict between an allegation and admitted facts. We also note that the State did not request a continuance. *See Williams,* 194 W.Va. at 61, 459 S.E.2d at 338, discussing the relief provided by Rule 56(f) "when a party needs additional information or time to respond to a motion for summary judgment. [Footnote and citation omitted.]"

Rule 56(e) [1978] states, in pertinent part:

When a motion for summary judgment is made and supported as provided in this

rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

When these Rule 56 principles are applied to the case at bar, we find that the circuit court's award of summary judgment was proper.

## III

Because we affirm the circuit court award of summary judgment, our discussion of the sanction applied in this case is limited. Rule 37(b) [1988] of the *W.Va.R.Civ.P.* is designed to ensure prompt and adequate responses to discovery requests. *See* Syl. pt. 1, *Shreve v. Warren Assoc., Inc.,* 177 W.Va. 600, 355 S.E.2d 389 (1987).

Rule 37(b) permits a circuit court to impose the following sanctions for failure to comply with an order compelling discovery:

(2) Sanctions by Court in Which Action is Pending.—If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to supplement as provided for under Rule 26(e), or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the follows:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination; ...

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.[9]

■ A circuit court's decision to impose sanctions under Rule 37(b) for a party's failure to obey a court order to provide or to permit discovery is within the court's sound discretion. Syl. pt. 1, *Bell, supra* note 9, states:

The imposition of sanctions by a circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

*See State ex rel. Rusen v. Hill,* 193 W.Va. 133, 142, 454 S.E.2d 427, 434 (1994), discussing standard of review for imposition of sanctions under Rule 16(d)(2) of the *W.Va. R.Crim.P.; Vincent v. Preiser,* 175 W.Va. 797, 804, 338 S.E.2d 398, 405 (1985).

*Bell* also recognized that because of the constitutional limitations and the purposes of Rule 37, "[a]s a general rule, the rendering of judgment by default as a sanction under Rule 37(b) should be used sparingly and only in extreme circumstances," in order to effectu-

---

**9.** Rule 37 of the *W.Va.R.Civ.P.* is virtually identical to Rule 37 of the *Federal Rules of Civil Procedure. See Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, *cert. denied,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985).

ate the "policy of the law favoring the disposition of cases on their merits. [Citations omitted.]" *Bell,* 175 W.Va. at 172, 332 S.E.2d at 134, quoting, *Affanato v. Merrill Brothers,* 547 F.2d 138, 140 (1st Cir.1977). *Davis v. Sheppe,* 187 W.Va. 194, 417 S.E.2d 113 (1992); *Hulmes by Vest v. Catterson,* 182 W.Va. 439, 442, 388 S.E.2d 313 (1989) (per curiam).

■ The circuit court is required to hold an evidentiary hearing and consider the entire record in order to determine if the "the failure to comply has been due to willfulness, bad faith or fault of the disobedient party and not the inability to comply and, further, that such sanctions are otherwise just." Syllabus Point 2, in part, *Bell.* Once the party seeking the sanction has met his burden of establishing noncompliance with the order compelling discovery, the burden shifts to "the disobedient party to avoid the sanctions sought under *W.Va.R.Civ.P.* 37(b) by showing that the inability to comply or special circumstances render the particular sanctions unjust." Syl. pt. 3, in part, *Bell.*

■ *Bell* also recognized that the actions of a party's counsel can justify the imposition of sanctions. Syl. pt. 4, *Bell, supra* note 9, states:

> Where a party's counsel intentionally or with gross negligence fails to obey an order of a circuit court to provide or permit discovery, the full range of sanctions under *W.Va.R.Civ.P.* 37(b) is available to the court and the party represented by that counsel must bear the consequences of counsel's actions.

In *Doulamis v. Alpine Lake Property Owners Ass'n, Inc.,* 184 W.Va. 107, 112, 399 S.E.2d 689, 694 (1990) (per curiam), we noted that "*W.Va.R.Civ.P.* Rule 37 [1988] provides various sanctions and that dismissal, the harshest sanction, should be used sparingly and only after other sanctions have failed to bring about compliance."

■ In this case, the circuit court conducted a hearing on the motion for sanctions and Ms. Cox established that the State had not complied with the circuit court's order compelling discovery. Although the State argues that no evidentiary hearing was held, the record contains a transcript of the November 12, 1993 hearing during which the circuit court considered Ms. Cox's motion for sanctions and the State's reasons for not complying.

■ The State also argues that its failure to disclose a 1964 letter already in Ms. Cox's possession was not prejudicial to her case. Although we agree that the State's failure to disclose the 1964 letter was not prejudicial, we note that the State's failure to disclose title reports and abstracts, the contents of which were not known to Ms. Cox, could have been prejudicial. Finally, we note that the State was given several opportunities, informal and formal, to comply before the sanction was imposed. Indeed the circuit court's order compelling discovery indicated that the failure to comply would be the imposition of this sanction.

The State maintains that its failure to comply with the discovery requests was not willful. Given the State's different explanations (*see supra* note 4) and failure to comply, we find that the circuit court did not abuse its discretion in imposing the sanction of striking the State's pleading.

For the above stated reasons, the decision of the circuit court of Tucker County is affirmed.

Affirmed.

June 23, 1995

CLECKLEY, Justice, concurring:

There is no question that the circuit court has authority to impose sanctions, including dismissal of an action, if a party fails to comply with a circuit court's order regarding discovery.[1] *Smallwood v. Raleigh General*

---

1. The circuit court made two rulings that affected the ultimate outcome of this case. First, it granted the plaintiff's motion for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure. Presumably, this ruling was based on the lack of an adequate response by the defendants, the State of West Virginia and the Department of Natural Resources, to the motion for summary judgment. Second, as a sanction for the egregious misconduct of the attorneys representing the State during the discovery phase of the litigation, the circuit court

*Hospital,* 194 W.Va. 48, 459 S.E.2d 159 (1995). Reviewing the imposition of sanctions for an abuse of discretion,[2] I believe under these facts the sanction of dismissal was unwarranted. Rather, I believe a monetary sanction should have been imposed against the attorneys representing the State of West Virginia. I concur, however, because even independently of the sanction imposed, the record in this case clearly demonstrates that the granting of summary judgment was proper under Rule 56 of the West Virginia Rules of Civil Procedure. Thus, "no harm, no foul."

"The legal system will endure only so long as members of society continue to believe that our courts endeavor to provide untainted, unbiased forums in which justice may be found and done.... Thus, it is beyond peradventure that ... [circuit courts] have broad authority to preserve and protect their essential functions." *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 107, 459 S.E.2d 374, 384 (1995). To ensure that circuit courts have tools available to protect their truth-seeking process, Rules 11 and 37 of the West Virginia Rules of Civil Procedure allow circuit courts in many contexts to sanction parties who fail to meet minimum standards of conduct. Even in the absence of these rules, a circuit court has inherent power to manage and control trial proceedings.

Of course, "[b]ecause of their very potency, ... [sanction] powers must be exercised with restraint and discretion. A primary aspect of ... [a circuit court's] discretion is the ability to fashion an *appropriate* sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27, 45 (1991). (Citation omitted; emphasis added).[3] Thus, a circuit court must ensure that there is an adequate predicate for exercising its substantial authority under either the rules or its inherent powers and must also ensure that the sanction is tailored to address the harm identified. This is particularly true when the sanction is in the form of a dismissal. As we suggested in *State ex rel. Rusen v. Hill,* 193 W.Va. 133, 142, 454 S.E.2d 427, 434–35 (1994), dismissal of an action is an extreme sanction, reserved for flagrant cases of bad faith and callous disregard for the circuit court's authority. *See also Hillig v. Comm'r,* 916 F.2d 171, 174–75 (4th Cir. 1990) (vacating dismissal of petition).

In exercising discretion under its powers, a circuit court must be guided by equitable considerations.[4] First, the circuit court must consider the conduct at issue and explain why the conduct warrants sanction. Obviously, a pattern of wrongdoing may require a stiffer sanction than an isolated incident. A grave wrongdoing may compel a more severe sanction than might a minor infraction. Wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongdoing that, through good fortune or diligence of the court or counsel, fails to achieve its untoward object. Furthermore, there may be mitigating fac-

---

entered an order striking the pleadings of the defendants as permitted under Rule 37(b)(2)(C). In my judgment, the striking of a party's pleadings is tantamount to a dismissal. This concurring opinion seeks to address the appropriateness of the sanction imposed by the circuit court.

**2.** *See Bell v. Inland Mutual Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, *appeal dismissed and cert. denied sub nom. Camden Fire Ins. Ass'n v. Justice,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Stevens v. Lawyers Mutual Liability Ins. Co.,* 789 F.2d 1056 (4th Cir.1986).

**3.** We review the circuit court's imposition of sanctions under an abuse of discretion standard, *see Chambers,* 501 U.S. at 55, 111 S.Ct. at 2138,

115 L.Ed.2d at 52; *Bell,* 175 W.Va. at 175, 332 S.E.2d at 137, but it is clear that a circuit court necessarily abuses its discretion if it bases its ruling on an erroneous assessment of the evidence or an erroneous view of the law.

**4.** In *Hillig,* 916 F.2d at 174, the Fourth Circuit Court of Appeals suggested that lower courts should consider four factors before imposing dismissal of a case as a sanction:

"(1) [W]hether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance caused the adversary[, which necessarily includes an inquiry into the materiality of the evidence he failed to produce]; (3) the need for deterring the particular type of noncompliance; and (4) the effectiveness of less drastic sanctions."

tors that must be accounted for in shaping a circuit court's response.

The trail of omissions by the State's attorneys is long, callous, and egregious. The attorneys for the State of West Virginia repeatedly failed to respond to interrogatories and requests for production of records that were served on April 21, 1993. Even after the State agreed to respond by a certain date, the plaintiff found it necessary to file a motion to compel and to seek a trial continuance. On August 20, 1993, the date scheduled to hear the plaintiff's motions, the State's attorney failed to appear and did not give the circuit court notice of his planned non-appearance, causing the court and counsel for the plaintiff to waste forty-five minutes. The State's attorney when contacted by telephone advised the circuit court for the first time that he had no objection to the motions.

The circuit court in its order dated August 26, 1993, found the State's failure to comply was without good cause and ordered the State to comply with the plaintiff's discovery requests on or before August 31, 1993, or "its [the State's] Answer and other pleadings will be stricken and Plaintiff will be granted summary judgment and Plaintiff's prayers for relief ... will be granted." The jury trial was rescheduled for December 16, 1993.

The State made only a miserable and partial effort to comply with the circuit court's order, knowing it risked the sanction of dismissal. In fact, the State for questionable reasons failed to provide a March 16, 1964, letter that was attached to the plaintiff's complaint. On September 3, 1993, plaintiff's counsel made an informal written request to the State to provide for comparison purposes the entire copies of the plats of the contested property. Receiving no response to this informal request, the plaintiff filed fifty-five requests for admissions pursuant to Rule 36 of the West Virginia Rules of Civil Procedure. The State, by not responding within thirty days, once again failed to comply with mandatory rules and, more importantly, failed to seek an extension of time or a protective order.

On October 28, 1993, the plaintiff filed a combined motion for summary judgment and a request for sanctions. The motion for summary judgment was based on the State's answer, facts omitted by the State's failure to comply with the time limits of Rule 36, and the tax maps and records from the County Assessor's office. Again, the State was derelict. It filed no response to either motion and did not make any effort to seek additional time to do so. As a result of the motions of the plaintiff, the circuit court scheduled a hearing for November 12, 1993.

At the scheduled hearing on November 12, 1993, the plaintiff, in addition to the documents listed in the preceding paragraph, presented the sworn testimony of the Tucker County Assessor who stated that according to the official tax maps, the disputed tract " 'is outside of the State Park boundary.' " By order dated November 19, 1993, the circuit court granted the plaintiff's motions for summary judgment and for sanctions striking all the State's pleadings and awarding summary judgment to the plaintiff. The plaintiff was also awarded an easement because the disputed property was landlocked. The State did not file a motion for reconsideration or to alter or amend the judgment within the ten days permitted by Rule 59(e) of the West Virginia Rules of Civil Procedure.

Nearly three months later, the State, being represented by another attorney, filed a motion for reconsideration.[5] The motion was

---

5. Technically, our civil procedure rules do not provide for a motion to reconsider. Our cases, however, have given the moving party the benefit of the doubt and have treated the motion as a request for relief either under Rule 59(e) or Rule 60(b) depending on the time the motion is filed. *See James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16, 21 (1995). Because the State failed to act timely under Rule 59(e), its motion could only be considered under Rule 60(b). There is a significant disadvantage and tradeoff in proceeding under Rule 60(b). Rarely is relief granted under this rule because it provides a remedy that is extraordinary and is only invoked upon a showing of exceptional circumstances. Because of the judiciary's adherence to the finality doctrine, relief under this provision is not to be liberally granted. Accordingly, the disposition of a Rule 60(b) motion is within the sound discretion of the circuit court and will not be overturned absent an abuse of that discretion. *Browder v. Director, Ill. Dep't of Corrections*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54

supplemented by some additional documents and plats that had been requested during discovery. It is important to note that the documents did not contain a title report, an abstract, or any responses to plaintiff's requests for admissions. Now comes the *coup d'état*. At a telephonic hearing scheduled on the State's motion, the State failed to appear or to notify the circuit court that it needed to reschedule the hearing it had requested. The circuit court, presumably concerned by the possibility of a miscommunication, telephoned the Attorney General's office only to be advised that the attorney earlier had called in sick and would not be available to argue the State's motion. No arrangements were made by anyone in the Attorney General's office to have substitute counsel available for this crucial hearing. On May 9, 1994, the circuit court entered an order denying the State's motion for reconsideration.

I can sum up the dereliction in fast order. When ordered by the circuit court to respond to interrogatories in a certain timely manner, the State failed to comply. When the State did partially comply, the answers lacked diligence and, indeed, some of the answers because of omissions were, in fact, misleading. Considering the manner and form of the responses and the systematic delay, the conduct of the State constituted bad faith.

The information sought by the plaintiff was material to the prosecution of the action. The State was dilatory throughout the discovery process in providing the most basic information. Deterrence of the type of conduct engaged in by counsel for the State was plainly warranted.

The only question that merits further discussion is the availability of less drastic alternatives. In evaluating the conduct at issue, a circuit court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction

imposed are inadequate or inappropriate. We have "indicated that dismissal, which is the harshest sanction under Rule 37, should be used sparingly, and only after other sanctions have failed to bring about compliance." *Smallwood v. Raleigh General Hospital,* 194 W.Va. at 50, 459 S.E.2d at 161. *See also Doulamis v. Alpine Lake Property Owners Ass'n, Inc.,* 184 W.Va. 107, 399 S.E.2d 689 (1990); *Chandos, Inc. v. Samson,* 150 W.Va. 428, 146 S.E.2d 837 (1966). Although the circuit court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power," *Landon v. Hunt,* 938 F.2d 450, 454 (3rd Cir.1991), "the court must explain why it has chosen any particular sanction from the range of alternatives it has identified." *Republic of the Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 74 (3rd Cir.1994). I believe the circuit court should have given serious consideration to imposing sanctions against the attorneys for the State. If an attorney rather than a client is at fault, the sanction should ordinarily target the culpable attorney.[6] This is particularly appropriate when the client is the citizens of West Virginia.

In an ordinary civil case, I would advocate the remand of the case to the circuit court to reconsider its decision on sanctions, at least, to consider a monetary sanction against the attorneys involved. This case, however, is not ordinary. Discounting the sanction that was imposed, the granting of summary judgment was appropriate and complied with our recent decisions in *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994); *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). Because the State failed to respond properly and timely to the motion for summary judgment, the trial court was obligated under Rule 56(c) to grant the plaintiff's motion. Furthermore, I am at least suspicious that had the State answered the

---

L.Ed.2d 521, 530 n. 7 (1978); *N.C. v. W.R.C.,* 173 W.Va. 434, 317 S.E.2d 793 (1984); *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970). Certainly, there is no abuse of discretion in this case.

**6.** While this factor is recognized as important, the extent of a party's personal responsibility is not always dispositive because a client cannot

always avoid the consequences of the acts or omissions of counsel. Here, however, there is no evidence that the clients were the reason for, or even had knowledge of, the evasive, callous, and bad faith efforts that led to the imposition of the sanction. Under these circumstances, the circuit court must give reasons why the sanction should not directly be imposed against the culprit, the attorneys representing the defendants.

requests for admission in good faith, it would have conceded the issue.[7] Under these circumstances, I believe the circuit court's failure to consider a less severe sanction or another form of sanction was harmless error at best. I, therefore, concur with the majority's conclusion.[8]

I am authorized to state that Justice Workman joins me in this concurring opinion.

7. The record of this case includes the fifty-five admissions that were never denied by the State. See the majority opinion for a discussion of these admissions.

8. I cannot leave this case without another observation. It is simply astonishing that after two calls on separate days to the office of the State's attorney by the busy circuit judge that neither attorney made any effort to offer a satisfactory explanation for the two "no-shows." The legal business of the State of West Virginia is indeed serious and, it must be taken as serious by all those who seek to provide it with legal representation. Concededly, this is not an appropriate occasion to allocate individual blame but there is definitely "something wrong in Denmark" when the attorneys for the State of West Virginia cannot give its client, the citizens of West Virginia, the *minimum* level of representation that other attorneys at the private sector accord to their clients. This type of legal representation should be condemned at all levels and I feel obligated to say so.