544 S.E.2d 395

**Bonita Sue HADOX and Robert B. Hadox, Plaintiffs Below, Appellants,**

v.

**Raenna M. MARTIN and Gary Rose Martin, Defendants Below, Appellees.**

No. 28242.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2001.

Decided Feb. 22, 2001.

Brent E. Beveridge, Fairmont, for the Appellants.

Thomas G. Steele, Clarksburg, for the Appellees.

## PER CURIAM:

This is an appeal by Bonita Sue Hadox and Robert Hadox (hereinafter "Appellants") from a jury verdict in the Circuit Court of Marion County in favor of Raenna Martin (hereinafter "Appellee") in a personal injury action arising from an automobile accident. The Appellants allege that the trial court erred by failing to admit the accident report and certain medical bills, as well as by refusing to enter judgment for the Appellants as a matter of law. Based upon the briefs, arguments, and record before this Court, we reverse the decision of the Circuit Court of Marion County and remand for a new trial.

### I. Facts

On June 5, 1996, an automobile operated by the Appellee struck the rear of an automobile operated by the Appellant Bonita Hadox, allegedly pushing the Hadox vehicle into a NAPA Auto Parts vehicle stopped in front of Mrs. Hadox. Sergeant William Cole[1] of the Fairmont City Police Department investigated the accident and indicated in the accident report that the Appellants' vehicle sustained damage to both the front and rear. The Appellee was issued a traffic citation for following too closely behind another vehicle.

Immediately following the accident, Appellant Mrs. Hadox informed Sergeant Cole that her neck and arm were aching. Her primary concern was that she was six to seven weeks pregnant, and she was distressed regarding the possible effect of the accident upon her unborn child. Mrs. Hadox reported to the emergency room on advice of her obstetrician, but she refused to undergo neck x-rays due to her pregnancy. A cervical collar was placed on her neck, and she was instructed to take Tylenol or Advil for pain. Within one week, Mrs. Hadox suffered a miscarriage.[2]

Approximately five weeks after the accident, Mrs. Hadox was examined by Dr. Russell Buindo based upon complaints of neck pain. Dr. Buindo diagnosed a soft tissue injury, "right upper trapezius strain and a cervical sprain," and recommended physical therapy. Based upon the advice of Dr. Buindo, Mrs. Hadox was treated by two physical therapists from July 1996 through June 1997. Both physical therapists testified at trial that their treatment was necessitated by the soft tissue injury, as diagnosed by Dr. Buindo. Mrs. Hadox was thereafter examined by Dr. Buindo three times in 1998 and 1999.

In the Appellee's answer to the complaint, she admitted "liability for the accident which is the subject of this civil action, but denie[d] said accident was a proximate cause of Plaintiffs' claimed injuries and damages." During the September 17, 1999, trial of this matter, the lower court admitted only the bills from one physical therapist, Mountain State Physical Therapy, in the amount of $2,907.00. The bills from Dr. Buindo and Madison House Physical Therapy (hereinafter "Madison House") were excluded based upon a pretrial ruling requiring submission of evidence twenty days prior to trial.[3] The actual bills for Dr. Buindo and Madison House were not provided by the Appellants to defense counsel until four or five business days before trial. Defense counsel did have knowledge of

---

1. Sergeant Cole died prior to the trial of this matter.

2. Although this civil action initially included a claim for the wrongful death of the unborn child, the Appellants abandoned that claim after the commencement of trial, and the issues surrounding that component of the Appellants' original civil action are not before this Court.

3. The June 25, 1999, pretrial order acknowledged the Appellants' proposed exhibits as follows: "a. Medical Records; and b. Medical Bills." The Appellants further listed itemized damages, indicating Madison House Physical Therapy and Dr. Russell Buindo but failing to specify dollar amounts for those two listings. The pre-trial order stated that "if *additional exhibits* are desired to be used by either of the parties, copies of such exhibits must be furnished to opposing counsel at least twenty (20) days before the trial date." (emphasis supplied).

the existence of the bills and the Appellants' intention to use the bills as exhibits at trial. The Appellants had not, however, disclosed the exact dollar amounts of the bills in the pretrial order due to delays in obtaining the bills from PEIA.[4] Based upon this discovery violation, the lower court refused to admit the Dr. Buindo and Madison House bills at trial.

During trial, the Appellee testified that she was traveling less than thirty miles per hour at the time of impact; that the impact did not push the Hadox vehicle into the car in front of the Hadox vehicle; and that the Appellee's vehicle barely hit the Hadox vehicle. In an attempt to rebut the Appellee's characterization of the accident as relatively minor and specifically to contradict the Appellee's particular assertion that the Hadox vehicle was not pushed forward, the Appellants attempted to introduce the accident report prepared by Sergeant Cole. Through introduction of the report, the Appellants sought to undermine the credibility of the Appellee's statements regarding the severity of the accident through evidence that both the front and rear of the Appellants' vehicle had been damaged.

The Appellee objected to the Appellants' attempted introduction of the accident report, contending that the report was hearsay. The lower court sustained that objection and immediately requested a bench conference. During that bench conference, the lower court asked counsel for the Appellants if the accident report had been listed as an exhibit in the pretrial order. The Appellants' counsel explained that the accident report had not been listed as an exhibit "because negligence wasn't an issue [the Appellee had admitted liability]. It is now for impeachment purposes." The lower court again stated that the objection to the accident report would be sustained.

At the conclusion of the trial, the jury returned a verdict awarding no damages to the Appellants. The Appellants appeal that determination to this Court, requesting review of the lower court's refusal to: (1) admit the accident report into evidence; (2) admit the medical bills into evidence; and (3) enter judgment for the plaintiffs as a matter of law.

## II. Standard of Review

The issues raised by the Appellants involve rulings of admissibility of evidence offered by the Appellants during trial. This Court explained as follows in syllabus point one of *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995):

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

With specific regard to our review of the lower court's imposition of sanctions for violations of time-frame orders, syllabus point one of *Bell v. Inland Mutual Insurance Co.*, 175 W.Va. 165, 332 S.E.2d 127, *cert. denied sub nom. Camden Fire Insurance Association v. Justice*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985), provides as follows:

The imposition of sanctions by a circuit court under *W.Va.R.Civ.P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

We consequently review these issues under an abuse of discretion standard.

## III. Discussion

### A. Admissibility of Medical Bills

The Appellee's sole objection to introduction of the medical bills of Dr. Buindo and Madison House was that the bills were not provided to defense counsel in accordance with the time requirements of the pretrial order. The Appellants assert that the lower court abused its discretion by imposing an overly harsh sanction upon them for their

4. PEIA is an acronym from Public Employees Insurance Agency.

violation of the time constraints dictated in the pretrial order. Rule 16(f) of the West Virginia Rules of Civil Procedure provides as follows:

*Sanctions.* If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), and (D). In lieu of or in addition to any other sanction, the judge may require the party or the attorney representing the party or both to pay reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Rule 37(b)(2)(B) of the West Virginia Rules of Civil Procedure authorizes a trial court to sanction a party for failure to obey a pretrial order by "prohibiting that party from introducing designated matters in evidence[.]"

 The failure to adhere to time constraints enumerated in pretrial orders and the resulting sanctions was discussed by this Court in *Sheely v. Pinion,* 200 W.Va. 472, 490 S.E.2d 291 (1997). In syllabus point one of *Sheely,* we explained as follows:

"In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances; and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case." Syl. Pt. 2, *Bartles v. Hinkle,* 196 W.Va. 381, 472 S.E.2d 827 (1996).

In *Bartles,* we explained:

On the appeal of sanctions, the question is not whether we would have imposed a more lenient penalty had we been the trial court, but whether the trial court abused its discretion in imposing the sanction. It does not mean, however, that we will rubber stamp the sanction decisions of a trial court. Both Rule 16(f) and 37(b) of the Rules of Civil Procedure allow the imposition of only those sanctions that are "just."

196 W.Va. at 389–90, 472 S.E.2d at 835–36 (citation omitted).

 As the United States Supreme Court recognized in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), "[b]ecause of their very potency, ... [sanction] powers must be exercised with restraint and discretion.... A primary aspect of ... [a trial court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45, 111 S.Ct. 2123 (citation omitted). This Court summarized the difficulties encountered in fashioning appropriate sanctions and the need to refrain from overly harsh sanctions as follows in *Bartles:*

It is hard to find an area of the law in which the governing rules are, and probably have to be, so vague. Admittedly, a trial court has broad authority to enforce its orders and to sanction any party who fails to comply with its discovery rulings. *Doulamis v. Alpine Lake Property Owners Ass'n,* 184 W.Va. 107, 399 S.E.2d 689 (1990); W.Va.R.Civ.P. 16(f) & 37(b)(2). The difficulty is that the range of circumstances is so vast, and the problems so much matters of degree, as to defy mechanical rules. Taken together, the cases set forth a list of pertinent considerations. Among those commonly mentioned are the public's interest in the expeditious resolution of litigation, the court's need to manage its docket, the severity of the violation, the legitimacy of the party's excuse, the repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the ade-

quacy of other sanctions. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2370 (2nd ed.1995). 196 W.Va. at 389, 472 S.E.2d at 835.

. In a concurrence to *Cox v. State*, 194 W.Va. 210, 460 S.E.2d 25 (1995), Justice Cleckley explained that a circuit court "must be guided by equitable considerations" in formulating appropriate sanctions. *Id.* at 218, 460 S.E.2d at 33.

> First, the circuit court must consider the conduct at issue and explain why the conduct warrants sanction. Obviously, a pattern of wrongdoing may require a stiffer sanction than an isolated incident.... Wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongdoing that, through good fortune or diligence of the court or counsel, fails to achieve its untoward object. Furthermore, there may be mitigating factors that must be accounted for in shaping a circuit court's response.

*Id.* at 218–19, 460 S.E.2d at 33–34. Justice Cleckley noted that the "trail of omissions" existing in *Cox* were "long, callous, and egregious" and therefore warranted sanctions by the lower court in that case. *Id.* at 219, 460 S.E.2d at 34.

In the case sub judice, however, we conclude that the lower court's imposition of the penalty of exclusion of the medical bills from Dr. Buindo and Madison House was not justified under these circumstances. The violation was minimal, isolated, and unlikely to prejudice the Appellee's rights. The Appellee knew of the existence of those bills and the Appellants' intention to present them as exhibits as trial, but did not have knowledge of the precise amounts of those bills. The bills were properly disclosed as exhibits in the pretrial order; only the dollar amounts were left blank. The record is devoid of evidence indicating that this omission was malicious or intentionally deceptive. Moreover, the Appellants advanced a legitimate reason for the late disclosure of the precise dollar amounts, explaining their inability to obtain exact bills through the PEIA insurance process.

Further, the Appellants were distinctly prejudiced by the exclusion of the bills. They were deprived of the ability to prove the specific dollar amounts of bills incurred, as reflecting necessary treatment resulting from the injuries incurred in the accident. We consequently find that the lower court abused its discretion in excluding the medical bills in this case.

B. Admissibility of the Accident Report

The Appellee's stated objection to the introduction of the accident report was its hearsay nature. Immediately following the lower court's decision to sustain that hearsay objection, the lower court also indicated, during a bench conference, that an additional basis for the exclusion of the accident report was the absence of reference to that report as an exhibit in the pretrial disclosures.

 The Appellants assert that the accident report was admissible under Rule 803(8) of the West Virginia Rules of Evidence, as an official government record, and also admissible due to Sergeant's Cole's unavailability at trial.[5] Rule 803(8) of the West Virginia Rules of Evidence provides as follows:

**5.** While not specified in their brief, we assume that the Appellants premise their claim that the accident report is admissible due to Sergeant's Cole's death upon Rule 804(b)(5) of the West Virginia Rules of Evidence. Where the declarant is unavailable, Rule 804(b)(5) permits introduction of

> [a] statement not specifically covered by any of the foregoing exceptions [former testimony, statement under belief of impending death, statement against interest, or statement of personal or family history] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the

statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Rule 803. Hearsay Exceptions: Availability of Declarant Immaterial.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(8) Public Records and Reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In *Ours v. West Virginia Department of Motor Vehicles*, 173 W.Va. 376, 315 S.E.2d 634 (1984), this Court explained: "As a general rule, accident reports are admissible under the official records exception to the hearsay rule if they meet certain criteria calculated to insure their reliability and trustworthiness." *Id.* at 380, 315 S.E.2d at 639. In syllabus point four of *Hess v. Arbogast*, 180 W.Va. 319, 376 S.E.2d 333 (1988), this Court observed: "Under *W.Va.R.Evid.* 803(8)(C), the contents of a public report, record or document are an exception to the hearsay rule and are assumed to be trustworthy, unless the opponent of the report establishes that the report is sufficiently untrustworthy."

The Appellants attempted to introduce the accident report to substantiate their claim of the existence of damage to both the front and rear of the their vehicle, a fact necessary to successful rebuttal of the Appellee's claims that the impact did not cause the Appellants' vehicle to lurch forward and hit the vehicle in front of the Appellants' vehicle. The trial court's exclusion of the accident report was prejudicial since that report constituted the primary means through which the Appellants could have disproved the Appellee's contention that the Appellants were exaggerating the seriousness of the accident. We conclude that the Appellants established the necessary predicates for the admission of the accident report under West Virginia Rule of Evidence 803(8).

The alternate ground for the exclusion of the accident report was premised upon the Appellants' failure to list the accident report as a potential exhibit during pretrial proceedings. The Appellants contend that the accident report was not listed as an exhibit because the Appellee had admitted liability. The accident report became imperative only as rebuttal to the Appellee's claims of insignificant damage resulting from the accident.

Under these circumstances, and consistent with our conclusions regarding the severity of the lower court's sanction for discovery violations on the issue of introduction of medical bills, we conclude that the trial court also abused its discretion and committed reversible error by excluding the accident report. The report was of "a critical nature, so that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." *Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir.1987) (holding that accident report was necessary to presentation of case and exclusion was in error).

## IV. Conclusion

Based upon the foregoing, we reverse the decision of the lower court and remand this matter for a new trial.[6]

Reversed and Remanded with Directions.

---

Based upon our conclusion that the accident report was admissible under Rule 803(8), we do not address the Appellants' contention that Sergeant Cole's unavailability renders the report admissible.

**6.** The Appellants also assert that the lower court erred in refusing to enter judgment for them as a

matter of law. Having based our decision to reverse upon the exclusion of the medical bills and the accident report, we do not address this final assignment of error.