## STATE OF WEST VIRGINIA

**Michael Conrad Murray,**
**Respondent Below, Petitioner**

**FILED**

June 7, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0771** (Kanawha County 10-D-1183)

**Kellie Marie Murray,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioner Michael Conrad Murray, by counsel Ancil G. Ramey, Peter J. Raupp, Hannah C. Ramey, and Susan L. Shepard, appeals the Circuit Court of Kanawha County's "Order Denying Petition for Appeal" entered on May 10, 2012. Respondent Kellie Marie Murray, by counsel Deloris J. Nibert, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and respondent began living together in 2001. They married on July 22, 2003, and separated on March 28, 2010. Respondent filed her petition for divorce on June 25, 2010, alleging irreconcilable differences, which petitioner admitted to in his answer. At the time of the divorce filing, petitioner was fifty-eight years old and respondent was forty-eight years old. Respondent has a daughter from a previous relationship, who was twelve years old at the time of the divorce filing. The parties have no children together.

By temporary order entered on October 12, 2010, the Kanawha County Family Court granted respondent temporary, in-kind spousal support from petitioner in the form of the mortgage payment on the marital home, plus payment of the water, gas, electric, and garbage bills. The court did not grant petitioner *Conrad*[1] credits for these bills, but designated them as spousal support. Petitioner was also ordered to maintain health insurance for respondent and her daughter.

---

[1]The Court in *Conrad v. Conrad,* 216 W.Va. 696, 612 S.E.2d 772 (2005), discussed a potential credit to a party in divorce proceedings where that party has payments of martial debt or maintenance on the marital home between the time of separation and the divorce.

The final divorce hearing was held on August 9, 2011, before Kanawha County Family Court Judge Sharon M. Mullens. At the time of the hearing, petitioner worked in construction. His income in 2008 was $63,747.98, plus unemployment compensation in the amount of $7,296.00. His income in 2009 was $61,660.75, plus unemployment compensation in the amount of $5,637.00. He did not disclose his income for 2010 and 2011, but check stubs admitted into evidence showed an average earning capacity in the amount of $6,231.12 per month. In addition, petitioner received a 2009 tax refund for $7,354, but alleged that he used this money to pay off marital credit card debt.

Respondent worked part-time as a surgical nurse, earning a gross monthly income of approximately $2,237.52 at the time of the final hearing. In 2008, respondent's annual gross income was $24,025.75 and her 2009 annual gross income was $4,792.49. Respondent testified that she worked full-time prior to the marriage and when the parties were first married, but quit working altogether after petitioner encouraged her to stay home to care for her daughter. When she did resume working, she worked part-time, in part, to care for her daughter, but also because she had been unable to find full-time work. The evidence showed that respondent is solely responsible for the care of her daughter, who at the time of the hearing, was in therapy due to behavior problems brought on by the divorce.

The evidence at the family court final hearing also revealed that petitioner caused the breakup of the marriage because of his excessive alcohol use. The court found that petitioner's drinking caused him to be mentally, emotionally, and sometimes physically abusive to respondent.

The marital home was appraised in 2009 at $98,000, which did not account for the necessary replacement of the septic system at a cost of approximately $7,000. The mortgage on this home had a balance of $45,000, leaving $46,000 in equity when factoring in the cost of the needed septic system. After the separation, petitioner began living rent-free in a home owned by his family.

The divorce also involved two houses on Chrystal Lake in Doddridge County, West Virginia. The first, referred to as Lot 37, was purchased in 2001 and titled in petitioner's name. He purchased the home at auction for $16,500, and this purchase price was rolled into the mortgage of the marital home when the parties refinanced in 2004. The parties made improvements to Lot 37 during the marriage. The second lake house, referred to as Lot 41, was purchased in 2006. The loan on this home was refinanced into the mortgage on the Tornado home in 2009. According to the most recent appraisals, Lot 37 was valued at $30,500, and Lot 41 at $34,000.

The evidence also revealed that petitioner owned stock that initially was his separate property, but was later commingled with marital funds. Petitioner presented no documentation to (1) establish that the stock was his separate property, or (2) the value thereof. Based on evidence submitted by respondent, the family court valued the stock at $65,000.

2

Based upon the evidence presented at the final divorce hearing, the family court ordered that respondent receive the marital home valued at $46,000, and other items of personal property. The total value of the respondent's property after distribution was $51,225.

The family court ordered that petitioner receive the lake house at Lot 37, with the marital portion valued at $14,000; the lake house at Lot 41, valued at $34,000; stock in Crystal Lake valued at $100; stock valued at $65,000; the 2009 income tax refund in the amount of $7,354; and other items not contested by respondent. The total value of petitioner's property after distribution was $125,281.27.

In order to equalize the distribution of marital property and debts, the court ordered that petitioner pay respondent a lump sum of $37,028.14 and granted respondent a judgment against petitioner for this amount. The court ordered that such payment be made within thirty days.

The court then granted respondent rehabilitative spousal support for one year in the amount of $1,500 per month, unless respondent sooner died, remarried, or cohabitated in a de facto marriage. Petitioner was also ordered to continue to provide health insurance for respondent and her daughter under the COBRA provisions of his employer's health insurance policy. Petitioner was ordered to pay the premiums on the policy, while respondent was to be responsible for any deductibles and copayments.

Finally, the family court ordered that petitioner pay respondent's attorney's fees in the amount of $8,323.48 and granted respondent a judgment against petitioner for this amount.

On November 14, 2011, petitioner appealed the family court's final order of divorce to circuit court. The circuit court heard arguments from the parties on January 23, 2012. On May 9, 2012, the circuit court entered an "Order Denying Petition for Appeal." It is from this order that petitioner appeals to this Court.

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, [the Supreme Court of Appeals] review[s] the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. [The Court] review[s] questions of law *de novo*.

Syl., *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004), see W.Va. Code § 51-2A-15(b). "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977).

Petitioner raises seven assignments of error in this appeal. First, he argues that the circuit court erred in affirming the family court's determination that the stocks and the entire value of Lot 37 were not his separate property, and therefore were subject to equitable distribution. West Virginia Code § 48-1-237 defines separate property to include the following:

3

(1) Property acquired by a person before marriage;

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage;

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage;

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution;

(5) Property acquired by a party during a marriage but after the separation of the parties and before ordering an annulment, divorce or separate maintenance; or

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this section which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

With regard to the stock, petitioner's mother testified that she inherited the stock from family members and transferred the stock to petitioner prior to his marriage to respondent. Petitioner testified that he neither purchased nor sold stocks during the marriage. Respondent disputed this testimony and introduced evidence in the form of a printout from "Microsoft Money" computer program that purported to show that he had in fact purchased and/or sold stocks during the marriage. We note that petitioner failed to disclose any documentation to prove that the stocks were not marital property, despite the respondent's requests for such documentation in discovery.

Assets required to be disclosed shall include, but are not limited to, real property, savings accounts, stocks and bonds, mortgages and notes, life insurance, health insurance coverage, interest in a partnership or corporation, tangible personal property, income from employment, future interests whether vested or nonvested and any other financial interest or source.

W.Va. Code § 48-7-202, in part. The only documentation that the family court had available to it to determine the status and value of the stocks was the documentation presented by respondent. "[T]he Legislature 'express[ed] a marked preference for characterizing the property of the parties as marital property.'" *Burnside v. Burnside,* 194 W.Va. 263, 267 460 S.E.2d 26, 268 (1995)(quoting *Whiting v. Whiting,* 183 W.Va. 451, 459, 396 S.E.2d 413, 421 (1990)). Petitioner failed to rebut the presumption that the stocks were marital property. Based on the record, we do not find that the circuit court erred in affirming the family court with regard to the classification and valuation of the stock.

As for Lot 37, we believe the family court properly classified this property as petitioner's separate property, but also properly found the $14,000 increase in value to be marital property. West Virginia Code § 48-1-233(2) defines "marital property" as

[t]he amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (A) an expenditure of funds

4

which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (B) work performed by either or both of the parties during the marriage.

Petitioner admitted the house was improved during the marriage and presented no evidence to rebut respondent's valuation of the improvements. Therefore, we do not find that the circuit court erred in affirming the family court as to the distribution of Lot 37.

Petitioner's second assignment of error is that he should not have been assigned the entire amount of the 2009 tax refund because he used these funds to satisfy a marital debt and/or a post-separation debt of respondent. However, petitioner introduced no credible evidence before the family court that he used the tax refund to pay off marital debt. He testified that he used the money from the tax refund to pay back a debt he owed to his mother, but he failed to establish that the money he received from his mother was used to satisfy a marital debt. The only documentation petitioner introduced was a copy of one page from a checking account statement that showed that he paid a Capitol One credit card bill, but no evidence that the bill was for a marital debt. We cannot find that the circuit court erred in affirming the family court's ruling that the entire 2009 tax refund be assigned to petitioner.

Third, petitioner argues that the family court erred by (1) reducing the value of the marital home by $7,000 to account for the repair of the septic system, and (2) by failing to take into account mortgage payments he made on the marital home after the parties separated. We do not agree. As respondent contends, the septic system repair was not included in the 2009 appraisal of the home and the estimates for the repair were obtained after the parties separated. The family court determined that this repair was necessary and consequently reduced the value of the home accordingly. As for the mortgage payments petitioner made after separation, these payments were ordered as temporary spousal support and petitioner did not ask for *Conrad* credits.

Fourth, petitioner argues that the family court erred by failing to give him *Conrad* credits for payments made under the temporary support order and/or not characterized as spousal support under that order. Petitioner now asks the Court to find payments he made on behalf of respondent to be designated as spousal support for which he receives a tax credit, and be designated at the same time as *Conrad* credits. If the payments are considered spousal support and characterized as such, he cannot also get credit in equitable distribution. Petitioner failed to produce any documentation at the hearing that he paid anything that could be considered in equitable distribution as *Conrad* credits. Therefore, we find no error by the circuit court in affirming the family court on this issue.

Fifth, petitioner argues that the family court erred in awarding respondent rehabilitative alimony. The family court made nineteen findings of fact in its final divorce order in support of its order for spousal support. The record shows that respondent became a stay-at-home mom during the marriage with petitioner's approval. Respondent has no one to care for her daughter at a reasonable cost if she returns to full-time shift work as a nurse. In addition, because of the divorce, respondent will be responsible for the full house payment, while petitioner has two lake

houses *debt-free* because those debts were rolled into the house for which respondent is now paying. Petitioner earns about three times what respondent earns. We see no error by the circuit court affirming the family court in awarding respondent rehabilitative alimony.

Sixth, petitioner argues that the family court erred in granting respondent a money judgment instead of distributing marital assets to equalize distribution. Here, petitioner essentially makes the same argument that he makes in his first assignment of error, namely, that the $65,000 in stock and the entire value of Lot 37 should not have been included in the distribution. The petitioner received two unencumbered lake properties and stock with significant value. As West Virginia Code § 48-7-105 expresses a "preference for effectuating equitable distribution through periodic or lump sum payments," we do not find that the circuit court erred in affirming the family court with regard to the money judgment granted to respondent.

In petitioner's final assignment of error, he contends that the respondent should not have been awarded her attorney's fees. This Court has held:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the [family court judge] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. Pt. 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996). Respondent presented her statement of attorney fees at the final divorce hearing and petitioner made no objection. Nevertheless, we find that the award of attorney fees in this case is warranted under West Virginia Code § 48-1-305. Therefore, we see no error in the circuit court's order affirming the award of the attorney fees in this case.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 7, 2013

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis