567 S.E.2d 285

**Milton Lee MILLS and Vanessa F. Mills, Plaintiffs Below, Appellants,**

v.

**Herman William DAVIS, U–Haul Rental Company and Republic Western Insurance Company, Defendants Below, Appellees.**

No. 30121.

Supreme Court of Appeals of West Virginia.

Submitted April 3, 2002.

Decided June 17, 2002.

Dissenting Opinion of Justice Maynard July 3, 2002.

---

Kenneth P. Hicks, Esq., Charles K. Garnes, Jr., Esq., Huntington, for Appellants.

Mark A. Atkinson, Esq., Timbera C. Wilcox, Esq., Rose & Atkinson, Charleston, for Appellees.

MCGRAW, Justice.

Appellants and plaintiffs below appeal the lower court's dismissal of their tort action arising from a car accident in Wayne County, West Virginia. After settling with the original defendants, appellants continued their action against their own underinsured motorist carrier, State Farm. Appellant Milton Lee Mills failed to attend an independent medical examination scheduled within a month of trial. Communication between the parties suggested that both would seek a continuance, but instead, counsel for State Farm moved for sanctions. In response, the lower court dismissed the action with prejudice. Because we find this sanction was unduly harsh under the facts of this case, we reverse.

## I.

## BACKGROUND

On July 28, 1998, appellants Milton Lee Mills and Vanessa F. Mills, along with another passenger, sustained injuries when defendant below Herman William Davis struck the Millses' vehicle with a rented U–Haul box truck near the town of East Lynn, in Wayne County. Mr. and Mrs. Mills filed suit in Wayne County on June 28, 1999, against the driver, Mr. Davis, his insurance company, Republic Western Insurance, and U–Haul. During discovery, the appellants/plaintiffs learned that the defendant driver had insurance limits of $20,000 per person, $40,000 per occurrence.

The circuit court ordered the parties to mediate the suit, and the parties met on May 8, 2000. During the mediation process, the plaintiffs/appellants learned that out of the limits mentioned above, another injured party had already received $14,000, leaving only $26,000 for the injuries sustained by both Mr. and Mrs. Mills. Subsequently, Mr. Davis' insurance company, Republic Western, paid out the remainder of the policy limits. Because, according to the Millses, these sums did not adequately compensate them for their injuries, the Millses served their under-insurance carrier, State Farm, with a copy of the summons and complaint. Subsequently, State Farm assumed the defense of the underlying action in the name of the original defendant, Mr. Davis.

Although the sequence of events brought State Farm into the case after the discovery process was well under way, the court proceeded under the time frame order previously set with the original defendants.[1] At some point after State Farm was joined, the appellants settled with all the other defendants.[2] In early September, counsel for State Farm, apparently without prior consultation with appellants' counsel, made appointments for Mr. and Mrs. Mills to each undergo an independent medical examination with a Dr. Bachwitt in Charleston in early October. Appellants' counsel objected to the use of Dr. Bachwitt, and State Farm's counsel agreed to set up new appointments with another doctor. By letter dated September 28, 2000, counsel for State Farm notified appellants' counsel that he had made an appointment for

---

1. The trial was originally scheduled for August 16, 2000. Subsequently the court continued the date to November 20, 2000.

2. Because State Farm was, at the time of the dismissal, the only defendant below and is now the only appellee actually participating in this appeal, we shall use the singular form and make reference now only to the "appellee."

Mr. and Mrs. Mills to see a Dr. Fernandes in South Charleston on October 25, 2000.

On October 3, 2000, the court entered an order that continued the trial date to November 20, 2000, and set a date of November 14 for a pre-trial hearing. It went on to state:

It is ORDERED that the discovery deadline in this matter shall be September 30, 2000. However, it is further ORDERED that the defendant will be allowed to get any necessary independent medical examinations of the plaintiffs after that date.

It appears from the record that this order was not in response to any motion to compel discovery, but was instead in response to the desire of one or more of the parties to continue the trial. Because the deadline for discovery was not changed and had, in fact, passed before the order was issued, the court found it necessary to explain that independent medical examinations of Mr. and Mrs. Mills would still be allowed after that date.

According to the appellants, on October 24, 2000, Mrs. Mills called her attorney and informed a staff member in the law office that Mr. Mills would not be able to attend the appointment with Dr. Fernandes. The precise reason given, or suggested, by Mrs. Mills for her husband's inability to attend the appointment has generated an enormous amount of controversy.

Counsel for the Millses maintains that the staff member who took the message from Mrs. Mills got the impression that a death or serious illness in the Mills family was the reason Mr. Mills could not attend the examination. Appellants' counsel then contacted counsel for State Farm and attributed Mr. Mills' absence to what he, appellants' counsel, apparently believed to be a death or serious illness in the Mills family. In actual fact, Mr. Mills did not attend because he was suffering from back and neck pain, was on one or more medications for this pain, and

felt that he was unable to make the hour-plus drive from his home to Charleston. Apparently appellants' counsel did not learn this for some time.

That same day, October 24, 2000, counsel for State Farm wrote counsel for the Millses and stated that he, counsel for State Farm, understood that "because of a death in the family, Mr. and Mrs. Mills will not be appearing" for their appointments. Because Dr. Fernandes apparently had no other openings before the trial date, counsel for State Farm suggested in the same letter that the trial would have to be continued.[3]

Apparently neither party attempted to have the trial continued, and no adjustment was made to the existing time-frame order, which called for a pre-trial hearing on November 14, 2000. The day before that hearing, counsel for State Farm served counsel for the Millses with a motion for sanctions, requesting that the Millses be barred from introducing medical evidence of their injuries, because they had not attended the examinations requested by the defense. In that motion appellee did not ask the court to compel attendance at the examination or ask the court to dismiss the case. At the pre-trial hearing the next day, the parties and the court discussed the failure of Mr. Mills to appear for the examination, and the reasons he gave for not attending.[4] At that hearing, apparently still under the mistaken belief that Mr. Mills had attended a funeral, appellants' counsel made representations to the court to that effect.

While the facts are in dispute, it appears from a reading of the record that the trial court at some point came to believe that Mr. Mills had indeed claimed to have gone to a funeral, and had lied about it; thus the court seems to have viewed the funeral story as not a miscommunication, but an outright fabrication. The court ordered Mr. Mills to produce evidence that he had attended, on

---

3. The October 24, 2000 letter stated:

It is my understanding that because of a death in the family, Mr. & Mrs. Mills will not be appearing for their scheduled IME's tomorrow with Dr. Fernandes. I have contacted Dr. Fernandes' office and was advised that he had no openings for IME's between now and the scheduled trial of this matter. Therefore, if the plaintiffs are unable to appear for the IME's, we will have to continue the trial date.

I hope that a continuance would not be a problem for your clients.

4. Apparently by this time State Farm had reached a settlement with Mrs. Mills, so her examination was no longer required.

October 25, the funeral of a parent, sibling or child. The order stated that if Mr. Mills could not provide this evidence by November 17, the court would dismiss the case, with prejudice.

The record contains a note dated November 17 from Mr. Mills that states he was suffering from a substantial amount of neck and back pain that day, was on medication for this pain, and could not miss a dose of his medication in order to drive to the appointment. However, because Mr. Mills had not attended any funeral, he was unable to provide the judge with the requested evidence. Accordingly, the judge dismissed the case with prejudice on November 17, 2000.

Mr. Mills moved the court to reconsider its decision, which the court refused. Mr. Mills filed a second motion asking the court to reconsider and requesting a hearing, which was held May 11, 2001. At that hearing, the judge reaffirmed his decision to dismiss the lawsuit, and by final order dated May 11, 2001, dismissed the case with prejudice. On appeal, Mr. Mills argues that dismissal was not an appropriate sanction under the facts of his case, and seeks to have the case reinstated. Because we find the lower court's order of dismissal to be too harsh a sanction, we reverse.

## II.

### STANDARD OF REVIEW

■ In order that judges may run their courtrooms effectively, they enjoy broad discretion in the use of sanctions under the Rules of Civil Procedure:

> The imposition of sanctions by a circuit court under W. Va. R. Civ. P. 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Syl. pt. 1, *Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, cert. denied *sub nom. Camden Fire Ins. Ass'n v. Justice,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985); *Accord,* Syl. pt. 6, *Arnold Agency v. West Virginia Lottery Comm'n,* 206 W.Va. 583, 526 S.E.2d 814 (1999). However, the judge's discretion is not without limit: "We grant trial court judges wide latitude in conducting the business of their courts. However, this authority does not go unchecked, and a judge may not abuse the discretion granted him or her under our law." *Lipscomb v. Tucker County Comm'n.,* 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999).

## III.

### DISCUSSION

■ Appellants argue that the sanction of dismissal was too harsh in this case. Appellants state that the discovery process had moved along with few problems before this incident, that the entire question of the funeral was a miscommunication, that Mr. Mills had a legitimate reason for missing the appointment, and that over a month remained before trial at the time of the missed appointment. Appellants also note that correspondence from appellee's counsel stated that the missed appointment might necessitate a continuance, but made no suggestion that a motion for sanctions, or any such action, was contemplated.

In sum, the appellants argue that nothing that had happened in the course of the trial merits the sanction of dismissal, or for that matter would even suggest to a reasonable observer that such a sanction were even a possibility. Appellants underscore the fact that appellee never sought an order compelling attendance at the medical examination, and that, moreover, appellee did not even ask appellants to attend an examination after October 24, 2000.

Appellee argues that it was appropriate for the court to dismiss the case because Mr. Mills ran afoul of not one, but two orders of the court. Appellee points to the court's order of October 3, 2000, which stated that appellants would "be allowed to get any necessary independent medical examinations," and to the court's order of November 15, which required Mr. Mills to prove that he attended a funeral. Appellee argues that, because the appellants did not or were not able to comply with these orders, the court had the authority to dismiss the case pursuant to Rule 37 of the West Virginia Rules of

Civil Procedure. That rule reads, in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:
>
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

W. Va. R. Civ. P. 37(b)(2). Obviously in the instant case, the judge applied subsection C in dismissing the action with prejudice.

■■■ When considering the issue of sanctions, we have stressed that a court must have good cause to issue a sanction, and that when used, the sanction must bear some reasonable relationship to the conduct at issue:

> Although Rules 11, 16, and 37 of the West Virginia Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct.

Syl. pt. 1, *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996). We question whether the relationship between missing the medical examination and dismissing the case with prejudice is a proportionate one, and whether the dismissal could be said to have been "fashioned to address the identified harm."

■■■ Appellants point out that appellee did not move for an order to compel.[5] We have explained that usually a motion to compel discovery is required before sanctions for not complying with a discovery request would be appropriate.

> Generally, under Rule 37 of the Rules of Civil Procedure to trigger the imposition of sanctions where a party refuses to comply with a discovery request, the other party must file a motion to have the court order discovery. If the discovery order is issued and not obeyed, then the party may seek sanctions under Rule 37(b) of the Rules of Civil Procedure.

Syl. pt. 1, *Prager v. Meckling*, 172 W.Va. 785, 310 S.E.2d 852 (1983).[6] As the Court went on to explain in *Prager*:

> We discussed this matter briefly in *State ex rel. McGraw v. West Virginia Judicial Review Board*, 165 W.Va. 704, 271 S.E.2d 344 (1980), where sanctions were sought because a witness had failed to answer certain questions at the taking of a deposition. We held that sanctions could not be imposed because there had been no motion

---

**5.** We note that it is Rule 35 that gives a judge the authority to order a physical examination, while Rule 37 applies to failure to cooperate in discovery.

**6.** The *Prager* Court also explained when a motion to have the court order discovery would not be required:

> The exceptions to the requirement for an order compelling discovery before sanctions can be obtained are contained in Rule 37(d). This provision enables a party to seek sanctions directly from the court where the opposing party has failed: (1) to attend his own deposition; (2) to answer or object to interrogatories; or (3) to serve written response to a request for inspection under Rule 34.

*Id.* 172 W.Va. at 788–89, 310 S.E.2d at 855 (footnote omitted).

under Rule 37(a) and no subsequent order directing the answers which if disobeyed would have formed the basis for sanctions under Rule 37(b).

*Id.* 172 W.Va. at 789, 310 S.E.2d at 855. *See also,* Cleckley, Davis & Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure,* § 37 at 722 (2002).

We have, in any number of cases, wrestled with the issue of when sanctions are called for, and when called for, what degree of sanction might be appropriate. Because of the limitless variety of cases and conduct faced by the courts, it is difficult to draw bright line rules:

> The difficulty is that the range of circumstances is so vast, and the problems so much matters of degree, as to defy mechanical rules. Taken together, the cases set forth a list of pertinent considerations. Among those commonly mentioned are the public's interest in the expeditious resolution of litigation, the court's need to manage its docket, the severity of the violation, the legitimacy of the party's excuse, the repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of other sanctions. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2370 (2nd ed.1995).

*Bartles v. Hinkle,* 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996).

After examining these various considerations that a court must review, the Court in *Bartles* held:

> In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

Syl. pt. 2, *Bartles v. Hinkle,* 196 W.Va. 381, 472 S.E.2d 827 (1996). Examining the facts of this case under this standard, we agree with appellee that missing the examination was no doubt serious, and if not rescheduled, would have a major impact on the case. However, several mitigating factors are present. Mr. Mills apparently did suffer from back and neck problems and was taking medication, and appellants' counsel received apparent assurances that appellee would ask for a continuance, which supports a reasonable belief that matters were proceeding apace. Also, there is nothing in the record that suggests a pattern of wrongdoing.

While appellants admit that some sanction may be appropriate, they argue that dismissal is far too severe. We have also cautioned that, the more severe the sanction, the more restraint a trial court must show:

> Of course, "[b]ecause of their very potency, ... [sanction] powers must be exercised with restraint and discretion. A primary aspect of ... [a circuit court's] discretion is the ability to fashion an *appropriate* sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27, 45 (1991). (Citation omitted; emphasis added). Thus, a circuit court must ensure that there is an adequate predicate for exercising its substantial authority under either the rules or its inherent powers and must also ensure that the sanction is tailored to address the harm identified. This is particularly true when the sanction is in the form of a dismissal. As we suggested in *State ex rel. Rusen v. Hill,* 193 W.Va. 133, 142, 454 S.E.2d 427, 434–35 (1994), dismissal of an action is an extreme sanction, reserved for flagrant cases of bad faith and callous disregard for the circuit court's authority. *See also Hillig v. Comm'r,* 916 F.2d 171, 174–75 (4th Cir.1990) (vacating dismissal of petition).

*Cox v. State,* 194 W.Va. 210, 218, 460 S.E.2d 25, 33 (1995) (per curiam) (Cleckley, J., concurring) (footnote omitted); *see also, Hadox v. Martin,* 209 W.Va. 180, 186, 544 S.E.2d 395, 401 (2001) (per curiam). Of course, dismissing an action is extremely severe.

We have suggested that such a harsh sanction should be used as a last resort, and that the party facing the sanction should have had fair warning that such a severe punishment was in the offing:

> In almost any conceivable set of circumstances, a circuit court's failure to (1) warn of an impending ultimate sanction, or (2) consider less onerous sanctions before dismissing the case would amount to reversible error. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40–41 (4th Cir. 1995); *see Cox v. Department of Natural Resources*, Nos. 22484 and 22485, 194 W.Va. 210, 460 S.E.2d 25 (1995) (Cleckley, J., concurring).

*Woolwine v. Raleigh Gen. Hosp.*, 194 W.Va. 322, 328 n. 8, 460 S.E.2d 457, 463 n. 8 (1995) (per curiam). Several federal courts share this view. In a dispute between a lawyer and a bakery, the lawyer sued when he allegedly broke a tooth on a cookie, the Fifth Circuit dismissed after the lawyer/plaintiff failed to comply with repeated motions to compel discovery. Nonetheless, the court stressed that dismissal is a harsh sanction:

> Rule 37(b)(2)(C) authorizes dismissal with prejudice when a party refuses to obey a discovery order. *Batson.* Because of the severity of this sanction, dismissal with prejudice typically is appropriate only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct.

*Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir.1990) (quoting *Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 515 (5th Cir.1985)). In another case, that relied in part on *Coane,* the Fifth Circuit held that a delay by counsel for the Federal Deposit Insurance Corporation in answering interrogatories in a suit against the directors of a defunct bank was not the sort of "contumacious conduct" that merited dismissal:

> Because the law favors the resolution of legal claims on the merits, *In re Dierschke,* 975 F.2d 181, 183 (5th Cir.1992), and because dismissal is a severe sanction that implicates due process, *Brinkmann v. Abner,* 813 F.2d 744, 749 (5th Cir.1987), we have previously deemed dismissal with prejudice to be a "draconian remedy" and a "remedy of last resort."

*F.D.I.C. v. Conner,* 20 F.3d 1376, 1380 (5th Cir.1994) (quoting *Batson v. Neal Spelce Associates, Inc.,* 765 F.2d 511, 515 (5th Cir. 1985)).

■ Because dismissal is such a severe sanction, ending the litigation and leaving a party with an appeal as the only option, we feel it is inappropriate to make use of it unless other steps have first been tried. As we suggested in *Prager,* without a motion from a party setting forth the specific discovery request an opponent had refused and moving the court to compel compliance, a court's decision to levy a sanction is usually premature. As another federal court has explained:

> It is well settled that a court cannot impose sanctions pursuant to Rule 37(b)(2) unless and until a specific order pursuant to Rule 37(a) is issued and then violated. *See R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 18 (1st Cir.1991); *Fleet Nat'l Bank v. Tellier,* 171 B.R. 478, 484 (D.R.I. 1994). In this regard, the rules of discovery are mechanical. They set forth a systematic two-step process for the enforcement of their provisions. Like the "ball player" who cannot advance directly "from second base to home plate, without bothering to round, let alone touch, third base," a court may not utilize the more stringent measures described in Rule 37(b)(2) until it has specifically ordered the disclosure of particular discovery pursuant to Rule 37(a) and that command has been disobeyed.

*Williams v. U.S.,* 215 B.R. 289, 301 (D.R.I. 1997) (quoting *R.W. Int'l Corp. v. Welch Foods, Inc.,* 937 F.2d 11, 15 (1st Cir.1991)).

The instant case demonstrates why such a specific motion requesting the court to compel compliance is a necessary step before dismissing an action. From the record it appears the litigation was proceeding apace. The appellants reached settlements with most parties, and both sides were communicating. Appellants' counsel notified appellee that Mr. Mills would be missing the examination, and appellee suggested not that sanctions would be sought, but that appellee would probably ask for a continuance. While

it is clear that appellants' counsel should have been more diligent in getting his clients to an examination, which was, after all, in the clients' interest, the record suggests that it was not unreasonable for appellants' counsel to believe that all was well with the case. A specific motion to compel the desired discovery would have crystallized the issue for all concerned, and might well have resulted in speedy compliance by the appellants.

■ Thus, in light of the guidance provided by the federal courts and our own holdings that dismissal is a severe sanction, to be used sparingly, we hold that in the absence of an order compelling discovery granted pursuant to a motion made by a party, it is an abuse of a circuit judge's discretion to dismiss an action with prejudice for a single or isolated failure to comply with a discovery request.[7] In the instant matter, we find that the circuit court was too harsh in dismissing the action. While other sanctions, such as requiring the appellants to pay for the costs of the missed examination, may be appropriate, outright dismissal simply is not, under the facts of this case.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Wayne County is reversed. Civil Action 99–C–126 shall be reinstated, and is remanded for a review of appropriate sanctions and further proceedings consistent with this opinion.

Reversed and remanded.

MAYNARD, Justice, dissenting.

(Filed July 3, 2002)

The undisputed facts of this case show that on October 3, 2000, the circuit court entered an order requiring Mr. Mills to submit to an independent medical examination. A medical examination was scheduled for October 25,

2000, and Mr. Mills failed to attend. At a pre-trial conference, counsel for Mr. Mills speculated that he may have been unable to attend the examination due to his attendance at a funeral. The circuit court then gave Mr. Mills the opportunity to substantiate this excuse which he was unable to do. As a result, the circuit court dismissed with prejudice Mr. Mills' remaining claim for underinsured motorist benefits against State Farm. This Court now reverses the dismissal because there was no motion to compel discovery prior to dismissal.

The majority hinges its decision on our rule that generally, prior to the imposition of sanctions under W.Va.R.Civ.P. 37, the other party must file a motion to have the court compel discovery. In the instant case, however, the application of this rule improperly places form over substance and, as a result, works an injustice to the appellee. According to Rule 37(b)(2), in part, "If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35 ... the court in which the action is pending may make such orders in regard to the failure as are just[.]" The rule proceeds to list several available sanctions, one of which is dismissal of the case. The circuit court's October 3, 2000 order stated, in part, "It is ORDERED that the discovery deadline in this matter shall be September 30, 2000. However, it is further ORDERED that the defendant will be allowed to get any necessary independent medical examinations of the plaintiffs after that date." I believe that this order constitutes "an order to provide or permit discovery," under Rule 37(b)(2). Therefore, according to the clear provisions of Rule 37, sanctions may be ordered.

Concerning the propriety of sanctions in a given set of circumstances, this Court provided in *Bartles v. Hinkle*, 196 W.Va. 381, 390, 472 S.E.2d 827, 836 (1996):

The party seeking sanctions under Rule 37(b) has the burden of proving noncompli-

---

**7.** We understand that appellee might take the position that its request for sanctions filed on November 14, and the court's corresponding order of November 15 demanding proof of the funeral would satisfy this rule. However, we note that Mr. Mills did respond with a letter to the judge explaining his absence. Because he

had not, in fact, attended a funeral, he could not comply fully with the judge's order. Moreover, the order commanding proof of the funeral is *still not the equivalent of a motion to compel* Mr. Mills' attendance at the examination, which we believe to be a necessary step, not taken in this case.

ance with a discovery order. If established, the burden of proof shifts to the noncompliant party to demonstrate either that it was unable to comply or that special circumstances exist which make the imposition of sanctions unjust. If it is demonstrated that a noncompliant party intentionally or with gross negligence failed to obey a court order, the full range of sanctions under Rule 37(b) is available to the court.

(Citations omitted). Applying this rule to the instant facts, it is uncontested that Mr. Mills failed to comply with the circuit court's October 3, 2000 order to provide or permit discovery. The burden then shifted to Mr. Mills to demonstrate either that he was unable to comply or that special circumstances exist which make the imposition of sanctions unjust. Mr. Mills was completely unable to meet this burden despite being given ample opportunity to do so by the circuit court. In its November 17, 2000 order of dismissal, the circuit court said:

> At the hearing on the motion for sanctions of the defendant, Herman William Davis, held on November 14, 2000, this court ordered the plaintiff to produce, by November 17, 2000 at 2:00 p.m., the reason he was not in attendance at the independent medical examination. The plaintiff has not produced such evidence.

Accordingly, because of Mr. Mills failure to justify his noncompliance with the circuit court's order, I believe that sanctions were appropriate.

Moreover, I do not believe that the sanction imposed was too severe under the facts of this case. In *Bartles*, 196 W.Va. at 389, 472 S.E.2d at 835, this Court set forth several pertinent considerations in the assessment of appropriate sanctions:

> Among those commonly mentioned are the public's interest in the expeditious resolution of litigation, the court's need to manage its docket, the severity of the violation, the legitimacy of the party's excuse, the repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of other sanctions.

(Citation omitted). The facts indicate that Mr. Mills deliberately failed to attend an independent medical examination. Further, because Mr. Mill's medical condition was to be the most significant issue at trial, his failure to attend the examination had a major impact on the case. In addition, Mr. Mills did not provide any mitigating excuses to the circuit court to explain the missed appointment. In light of these facts, I believe that dismissal of the case with prejudice was appropriate.

Finally, I am concerned that the majority opinion may have unfortunate consequences for the discovery process in future cases. For example, parties may be encouraged to delay or disregard compliance with discovery orders until specifically threatened with impending sanctions by circuit courts. This would impede efforts by circuit courts to efficiently manage their dockets, and in turn prevent the speedy resolution of disputes.

In conclusion, for the reasons stated above, I do not believe that the circuit court abused its discretion in dismissing the case below. Accordingly, I dissent.