IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

_____

No. 17-0206

_____

FILED
**April 6, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

January 2018 Term

TERRI SMITH AND KENNETH SMITH,
Plaintiffs Below, Petitioners

v.

ROBERT TODD GEBHARDT, MICHAEL COYNE, AND TRIPLE S&D, INC.,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Ohio County
The Honorable David J. Sims, Judge
Civil Action No. 13-C-323

Reversed and Remanded

_____

Submitted: February 13, 2018
Filed: April 6, 2018

Ronald Wm Kasserman, Esq.
Kasserman Law Offices, PLLC
Wheeling, West Virginia
Counsel for Petitioners

P. Joseph Craycraft, Esq.
Katherine N. Dean, Esq.
Swartz Campbell LLC
Wheeling, West Virginia
Counsel for Respondent Robert Todd
Gebhardt

Mark Kepple, Esq.
Bailey & Wyant, PLLC
Wheeling, West Virginia
Counsel for Respondents Michael Coyne
    and Triple S&D, Inc.

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court
JUSTICE DAVIS concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1. "In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case." Syl. Pt. 2, *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996).

2. "Imposition of sanctions of dismissal and default judgment for serious litigation misconduct pursuant to the inherent powers of the court to regulate its proceedings will be upheld upon review as a proper exercise of discretion when trial court findings adequately demonstrate and establish willfulness, bad faith or fault of the offending party." Syl. Pt. 7, *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 226 W.Va. 103, 697 S.E.2d 139 (2010).

Workman, Chief Justice:

This case is before the Court upon the appeal of Terri and Kenneth Smith (hereinafter "the Petitioners") from a February 3, 2017, order of the Circuit Court of Ohio County dismissing their civil action as a sanction for alleged discovery violations. Upon review of the briefs, arguments of counsel, appendix record, and applicable precedent, this Court reverses the circuit court's decision and remands this matter for further proceedings consistent with this opinion.

I.  Factual and Procedural History

The Petitioners contracted with the Respondent Robert Gebhardt (hereinafter "Gebhardt") in 2009 to construct a single story home with cement block foundation and concrete basement flooring for $226,102.23. Portions of the basement were to be finished with dry wall and ceiling. Brick was to be placed on the home's exterior, creating a three-foot veneer around the bottom wall of the home, with the remainder of the exterior finished with aluminum siding.

Approximately four months after the Petitioners took occupancy of the home, they informed Gebhardt that the block in the basement was wet. According to the Petitioners, Gebhardt unsuccessfully attempted to remedy the water infiltration for the

1

following three years. On September 27, 2013, with an amended complaint filed on December 18, 2014, the Petitioners instituted a civil action alleging unfair and deceptive acts; breach of express and implied warranties; breach of contract; negligence; intentional interference with warranty contracts; common law fraud and fraudulent inducement; and intentional, willful, wanton, malice or outrageous conduct.[1] On September 21, 2015, Gebhardt filed multiple motions in limine, a motion for sanctions, and a motion to strike regarding the Petitioners' experts. He also filed five motions for summary judgment on various theories of liability and a motion to dismiss based upon spoliation of evidence. Respondent Coyne also filed twelve motions with the circuit court.

During an October 16, 2015, pretrial conference, the circuit court considered Gebhardt's motion to dismiss. The motion to dismiss was based upon Gebhardt's allegations that the Petitioners intentionally caused water damage by positioning a garden hose at the exterior corners of the home; that their expert collected mold samples without notice to the defendants; that they blocked their foundation drainage system; that they inappropriately removed part of the exterior brick; and that they deconstructed an interior bannister post.

---

[1]The original complaint was filed against Gephardt, supplier Lumber Liquidators, and an unknown contractor. The amended complaint included Respondents Michael Coyne and Triple S&D as defendants. Those defendants had been hired for the purpose of completing masonry work, block foundation, and brick veneer on the home construction project.

The circuit court ultimately postponed trial until November 14, 2016, due to the "volume of pretrial motions, responses, exhibits and expert testimony for the Court to address. . . ." In April 2016, the circuit court denied Gebhardt's motion to dismiss, finding that dismissal was not an appropriate remedy for the conduct alleged.[2] In October 2016, the circuit court ruled on various discovery motions, addressing the defendants' concerns by limiting expert testimony, excluding certain evidence, and indicating that adverse inference jury instructions would be considered at trial. No more drastic sanctions, such as dismissal, were mentioned at that time.

On November 8, 2016, Gebhardt was personally served by a professional process server, John Dan Livingston, with a subpoena duces tecum requesting Gebhardt to bring to trial on November 14, 2016, "receipts for gravel applied to the basement floor . . . before the concrete was poured." Gebhardt's counsel was not served.

Gephardt filed a second motion to dismiss the civil action on November 9, 2016, arguing that service of the subpoena duces tecum directly upon him, without notice to his counsel, constituted "harassment and intimidation of a key party-defendant in litigation

---

[2]In April 2016, the circuit court also granted summary judgment in Gebhardt's favor on the Petitioners' claims of fraud and fraudulent inducement, intentional interference with warranty contracts, violations of the consumer credit and protection statute, and punitive damages.

on the eve of trial." The circuit court responded by cancelling the November 14, 2016, trial and setting the matter for a November 15, 2016, evidentiary hearing.

The Petitioners and Gebhardt testified during the evidentiary hearing. Gebhardt denied being harassed, intimidated, or threatened by the service of the subpoena directly upon him. The subcontractor defendants, Coyne and Triple S&D, indicated that they "did not take any position on the Motion" to dismiss. Gebhardt did not file a motion to quash the subpoena.

On February 3, 2017, the circuit court granted Gebhardt's motion to dismiss as a sanction for the alleged discovery violations. The circuit court identified ten instances of alleged wrongful conduct by the Petitioners. These instances, developed in further detail in the discussion portion of this opinion, generally include the following: placing orange paint on portions of the basement wall to mark areas of hollow walls; intentionally causing water damage to the home; removal of some brick; blocking a drain; performing testing on a bannister without notice to the defendants; performing mold tests without notice to the defendants; presenting inaccurate expert disclosures; inappropriately recording a conversation with Gephardt; inappropriately communicating with Gebhardt's Rule 26(b)(4)[3]

[3]Rule 26(b)(4) of the West Virginia Rules of Civil Procedure, in pertinent part, provides:

(continued...)

4

non-testifying consultant; and improperly serving a subpoena duces tecum directly upon

Gebhardt without notice to his counsel.

---

[3](...continued)

Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

(ii) A party may depose any person who has been identified as an expert whose opinions may be presented at trial.

(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

The Petitioners appeal, contending that the circuit court based its sanction upon a variety of erroneous legal conclusions and that dismissal of the civil action was an abuse of discretion.

## II. Standard of Review

This Court has consistently applied an abuse of discretion standard in our review of matters regarding the imposition of sanctions by a lower court. *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996). Recognizing the authority of a circuit court "to fashion an appropriate sanction for conduct which abuses the judicial process," this Court has also provided guidance to courts in fashioning sanctions for discovery misconduct. *Id.* at 389, 472 S.E.2d at 835 (internal quotations omitted). In syllabus point two of *Bartles,* this Court explained:

> In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

This Court also cautioned in *Bartles* that although no formal procedures are required when issuing a sanction,

6

a court must ensure it has an adequate foundation . . . and [t]he Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct.

196 W.Va. at 384, 472 S.E.2d at 830. With those standards as guidance, we address the contentions of the parties to this appeal.


## III. Discussion

Dismissal of a civil action as a sanction for a party's inappropriate conduct during discovery is a severe result to be used sparingly. Imposition of such a drastic sanction is justified only where an offending party has engaged in willfulness, bad faith, or fault. This principle was explained in syllabus point seven of *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders*, 226 W.Va. 103, 697 S.E.2d 139 (2010), as follows:

Imposition of sanctions of dismissal and default judgment for serious litigation misconduct pursuant to the inherent powers of the court to regulate its proceedings will be upheld upon review as a proper exercise of discretion when trial court findings adequately demonstrate and establish willfulness, bad faith or fault of the offending party.

This Court also articulated the basis for this approach in *Richmond*:

As was stated in *Cattrell Cos. v. Carlton, Inc.*, 217 W.Va. 1, 14, 614 S.E.2d 1, 14 (2005), "dismissal and default [judgment] are [considered] drastic sanctions that should be imposed only in extreme circumstances." *See also Doulamis v. Alpine Lake*

7

> *Prop. Owners Ass'n, Inc.*, 184 W.Va. 107, 112, 399 S.E.2d 689,
> 694 (1990) (stating that "dismissal, the harshest sanction, should
> be used sparingly and only after other sanctions have failed to
> bring about compliance."); *Bell v. Inland Mut. Ins. Co.*, 175
> W.Va. at 172, 332 S.E.2d at 134 (1985) (advising that the
> sanction of default judgment "should be used sparingly and only
> in extreme situations [in order to effectuate] the policy of the
> law favoring the disposition of cases on their merits.").

226 W.Va. at 113, 697 S.E.2d at 149.

Clearly compelling a two-step inquiry upon appellate review, this Court explained in *Richmond* that our evaluation must include separate components. First, we must examine "whether the sanctioning court identified the wrongful conduct with clear explanation on the record of why it decided that a sanction was appropriate." *Id.* Second,

> [w]e then must determine whether the sanction actually imposed
> fits the seriousness of the identified conduct in light of the
> impact the conduct had in the case and the administration of
> justice, any mitigating circumstances, and with due
> consideration given to whether the conduct was an isolated
> occurrence or a pattern of wrongdoing.

*Id*.

Adhering to that evaluation protocol, we first examine the conduct for which the Petitioners in this case were ultimately sanctioned, as chronicled by the circuit court. The circuit court identified ten distinct areas of alleged misconduct; each is outlined separately below.

8

1. The circuit court noted that the Petitioners permitted Jake Lammott of Ground Penetrating Radar Systems to place orange paint on portions of the basement block wall to mark areas of allegedly hollow walls. Through this procedure of utilizing a scanner to locate hollow portions of the walls, the Petitioners attempted to determine whether Gephardt was being truthful when he said the basement walls were poured with solid concrete. Gephardt's counsel performed two informal inspections of the home before the orange paint was placed, and he had disclosed photos taken during those inspections as trial exhibits.[4] Mr. Lammott's investigation did not alter the walls in any manner; particular areas were simply marked with orange paint. The circuit court addressed this issue in an October 5, 2016, order and deferred ruling on Gebhardt's motion to strike the Petitioners' expert, Jake Lammott, until an objection could be raised at trial; no sanctions were referenced in that order. In the 2017 dismissal order currently on appeal, however, the circuit court characterized the orange paint incident as "secretly destroying and manipulating evidence" and used it as a basis for granting Gebhardt's second motion to dismiss.[5]

---

[4]The Petitioners assert that over 123 photographs were taken prior to the placement of orange paint on the unfinished block walls of the basement. Those photographs showed wetness and staining over a three-year period and were provided to Gebhardt prior to his causation engineer's inspection of the home on October 19, 2014.

[5] The Petitioners argue that the circuit court could have imposed a sanction for their painting of the walls, such as exclusion of expert testimony or photographs, but that dismissal of their civil action is overly punitive.

9

2. The circuit court addressed the issue of the Petitioners' intentional watering of an area around the foundation of the home. This water testing was accomplished approximately five months before the complaint was filed, and the Petitioners alleged that Gephardt had also attempted the watering test in an effort to determine the precise location of water intrusion. On appeal, the Petitioners emphasize that the circuit court granted a motion in limine to preclude evidence related to watering because it did not constitute a scientific test performed under proper supervision. No mention of sanctions was made by the circuit court at the time it precluded that evidence.

3. The circuit court found that the Petitioners' removal of a 20" x 22" portion of the brick veneer was improper. The removal revealed less than one inch of air space between the brick veneer wall and the underlying wall. It also revealed the absence of flashing between the lower concrete block foundation and the first brick layer. The removal was undertaken in November 2014 and served as a ground for Gebhardt's first motion to dismiss. In denying that motion in April 2016, the circuit court specified that the sanction of dismissal was not warranted. Gebhardt had already taken photographs of that area and was not prejudiced by the brick removal. The subcontractors' expert causation engineer, Lorey Caldwell, had also inspected the home prior to the removal of the portion of veneer.

4. In dismissing the civil action in February 2017, the circuit court also referenced the Petitioners' actions in allegedly blocking an away drain near the foundation of the home. The Petitioners emphasize that this was also a ground raised in Gebhardt's first motion to dismiss, and the circuit court found that it did not warrant dismissal as a sanction. The Petitioners had placed a screen over the drain to prevent snakes from entering the pipe, but the screen had become mildewed and blocked with moss. They photographed the drain while it was in place and later removed it in an effort to mitigate any damages. The screening was preserved for later inspection, was not washed, and was produced as evidence. Gebhardt's counsel also allegedly inspected the drain and photographed the premises on December 19, 2013, and February 18, 2014.

5. The circuit court also found improper action by the Petitioners in dismantling a bannister[6] in the home without prior notice to the defendants. This action, characterized as spoliation of evidence, was also one of the grounds asserted in Gephardt's first motion to dismiss. That motion was denied, and dismissal was not deemed warranted.[7] Instead, the circuit court prohibited testimony on measurements obtained through the bannister testing and indicated that it would consider an adverse jury instruction based on the

[6]The Petitioners performed the bannister test in an attempt to impeach Gebhardt's testimony regarding proper reinforcement of the post.

[7]In its April 2016, order denying Gebhardt's first motion to dismiss, the circuit court stated: "The Court has concluded that dismissal of this action is not an appropriate remedy for the conduct alleged in this matter."

11

Petitioners' alleged spoliation of evidence. The testing did not destroy the bannister; it was simply disassembled and reassembled. Morever, an expert for the defendants had previously performed inspections of the bannister.

6. The circuit court also cited the Petitioners' action in allowing a mold expert, John Gongola, to perform an air sampling test for mold without notice to the defendants. Again, this action constituted one of the grounds for Gebhardt's prior motion to dismiss, and the circuit court held that dismissal was not an appropriate remedy at that time. Interestingly, the circuit court had also concluded in 2016 that "[w]hile testing conducted by Plaintiffs without notice to Defendants was improper and potentially prejudicial, the Court cannot conclude that Defendants spoliation claim has merit." The circuit court had also explained: "Further, the Court cannot conclude that Defendants were prejudiced by [the Petitioners'] improper conduct."

7. The circuit court also addressed the Petitioners' allegedly inaccurate expert disclosures. These issues had also been addressed in prior orders, and the circuit court had already limited the testimony of several experts based upon their disclaiming or withdrawal of certain components of their opinions. None of the experts had been entirely excluded, and no sanctions had been imposed at that time.

8. The circuit court also found inappropriate action by the Petitioners' counsel in secretly recording a meeting with Gebhardt on April 9, 2013, well before this civil action was filed.[8] The Petitioners contend that the recording is expressly authorized by West Virginia Code § 62-1D-3(e) (2014),[9] and they maintain that the purpose of the recording was to preserve an inconsistent statement by Gebhardt regarding the use of solid concrete in the cement block foundation. By order dated October 12, 2016, the circuit court had granted Gebhardt's motion in limine excluding the recording, but no sanctions were mentioned at that time.

9. The Petitioners' communication with Mr. Phil Huffner was also referenced as a ground for the dismissal as a sanction. Mr. Huffner, a non-testifying consultant for Gebhardt, voluntarily discussed the Petitioners' home with their expert and indicated that he

---

[8]The circuit court was particularly troubled by the secret recording, noting that it was "totally uncomfortable with" the recording and "[j]ust because something is legal, doesn't make it right." The circuit court stated that "while not illegal and not clearly unethical, [the recording] was dishonorable and undermined the integrity of the judicial system. It was underhanded and prejudicial to the fair administration of justice."

[9]West Virginia Code § 62-1D-3(e) provides:

> It is lawful under this article for a person to intercept a wire, oral or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or the constitution or laws of this state.

13

believed the home was a "tear down" home. The Petitioners assert that Mr. Huffner did not agree to serve as their expert, did not respond to their attempts at communication, and was never retained or paid by the Petitioners' counsel. They abandoned Mr. Huffner as a potential witness and did not list him as a witness in their pretrial memorandum filed October 15, 2015.

10. As referenced above, Gebhardt was personally served on November 8, 2016, by a professional process server with a subpoena duces tecum requesting Gebhardt to bring to trial on November 14, 2016, "receipts for gravel applied to the basement floor . . . before the concrete was poured." Gebhardt argued that such service, without notice to his counsel, was improper and justified dismissal of the Petitioners' civil action as a sanction.

These instances of alleged discovery misconduct were identified with particularity in the circuit court's dismissal order, thus satisfying the first phase of our inquiry, as outlined above and explained in *Richmond*. In the second phase of the required inquiry, however, this Court must determine whether the sanction of dismissal "fits the seriousness of the identified conduct." *Richmond*, 226 W.Va. at 113, 697 S.E.2d at 149. As the Petitioners contend, it is imperative to note that the circuit court had *previously considered* the discovery conduct in the instances summarized in numbers one through nine above and had determined that they *did not constitute a sufficient basis for imposition of*

14

*dismissal*.  It was only with the addition of the service of the subpoena duces tecum that the circuit court ultimately found justification for dismissal as a sanction.  Thus, while the circuit court's order insinuates that all ten factors served as a basis for its decision, the service of the subpoena was the *only additional* action prompting the circuit court's dismissal decision.  Prior issues had been addressed, dealt with through alternate means, and found insufficient to warrant dismissal of the Petitioners' civil action.[10]

Consequently, the actual question for the circuit court was whether the Petitioners' decision to directly serve the subpoena on Gebhardt without prior notice to his counsel was sufficiently egregious to warrant dismissal of their civil action.  The circuit court found service of the subpoena to be in "reckless disregard of proper judicial process" and noted that the Petitioners' conduct "resulted in harassment and distraction to Gebhardt on the eve of trial."[11]  Additionally, the court indicated that the Petitioners "caused Gebhardt to waste time and effort chasing 7-year-old gravel receipts. . ." and that he "may have been induced to make statements and admissions to a person who could be called to testify at trial against him. . . ."

---

[10]The service of the subpoena was the only significant discovery issue in over a year. As explained above, Gebhardt's first motion to dismiss had been denied on April 15, 2016, accompanied by the circuit court's conclusion "that dismissal of this action is not an appropriate remedy for the conduct alleged in this matter."

[11]The Petitioners, however, emphasize Gebhardt's admission that the service of the subpoena in no manner threatened him.

On appeal, the Petitioners make the cursory argument that the subpoena was a trial request, rather than a discovery request,[12] and that they fully complied with the Rules of Civil Procedure[13] in serving the subpoena. Neither the parties nor the circuit court sufficiently addressed the intricacies of the Rule 45 requirements for service of trial subpoenas, the use of the rule upon parties as opposed to non-parties, the requirement for serving counsel, or the applicability of West Virginia Code § 57-5-3 (2012) permitting service of trial subpoenas.[14] Thus, issues surrounding the use of Rule 45 have not been

---

[12]Documents and bills pertaining to the purchase of materials, such as the gravel at issue here, had been requested during discovery, as early as the March 17, 2015, deposition of Gebhardt. He testified during that deposition that the bills were "not with me," but that there was a "very strong possibility" that he had them at home. His attorney also indicated that the additional documentation would be produced.

[13]Rule 45 of the West Virginia Rules of Civil Procedure provides as follows, with specific regard to commanded production of documents: "Prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." W.Va. R. Civ. P. 45(b)(1). Rule 5(b) provides, in pertinent part: "Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court." W.Va. R. Civ. P. 5(b). The circuit court did not meaningfully evaluate Rule 45 in its order, mentioning it only briefly in a footnote and not quoting the entire sentence quoted above.

[14]West Virginia Code § 57-5-3 provides:

> In any case at law, upon a party making affidavit that a particular book of accounts, or other writing or paper is important for him to have in the trial of his cause, he may procure from the clerk of the court in which the action is pending a subpoena duces tecum requiring any party to the action to appear before the court on a day named therein, and bring with him and produce before such court such book of

(continued...)

16

adequately developed and are not properly before this Court.[15]  Moreover, the ultimate and

critical decision for this Court is whether the circuit court abused its discretion in dismissing

the civil action as a sanction for alleged discovery violations.

Based upon the record before this Court, we find that even if we assume,

arguendo, that there was a violation or irregularity in the attempted service of the subpoena

duces tecum, such violation did not justify the extreme sanction of dismissal.  The prior

discovery actions by the Petitioners, while generally relevant to the question of a pattern of

wrongdoing,[16] had already been dealt with and had been deemed an insufficient basis for

dismissal.  A *Richmond* evaluation, regarding the impact on the case, administration of

justice, and mitigating circumstances, results unequivocally in a conclusion that dismissal of

---

[14](...continued)
> accounts, or other writing or paper, as is specified in such
> process, in order that the same may be used as evidence on the
> trial of the action.

W.Va. Code § 57-5-3.

[15]*See State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").  Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on. . . ."

[16]This Court is not unmindful of the frustrations a circuit court encounters in the management of extensive discovery conflicts.  The decision to dismiss this civil action, however, was unwarranted.

the Petitioners' cause of action was not justified under these circumstances. *See Richmond*, 226 W.Va. at 113, 697 S.E.2d at 149. Imposition of the extreme sanction of dismissal was an abuse of discretion.

As this Court stated in *Mills v. Davis*, 211 W.Va. 569, 567 S.E.2d 285 (2002), "the more severe the sanction, the more restraint a trial court must show[.]" *Id*. at 575, 567 S.E.2d at 291. "[A] circuit court must ensure that there is an adequate predicate for exercising its substantial authority . . . and must also ensure that the sanction is tailored to address the harm identified. This is particularly true when the sanction is in the form of a dismissal." *Cox v. State*, 194 W.Va. 210, 218, 460 S.E.2d 25, 33 (1995) (Cleckley, J., concurring); *see also Chambers v. NASCO, Inc*., 501 U.S. 32, 44-45 (1991) ("Because of their very potency, . . . [sanction] powers must be exercised with restraint and discretion. . . ."). As we recognized in *Mills*, appropriate sanctions short of dismissal do exist. "In the instant matter, we find that the circuit court was too harsh in dismissing the action. While other sanctions . . . may be appropriate, outright dismissal simply is not, under the facts of this case." *Mills*, 211 W.Va. at 577, 567 S.E.2d at 293.

## IV. Conclusion

Based upon this Court's review, we find that the circuit court abused its discretion by imposing the sanction of dismissal. For the reasons stated, the judgment of the

18

Circuit Court of Ohio County is reversed.  The civil action shall be reinstated and is remanded for further proceedings.

Reversed and remanded.